IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MELLISSA STEVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIV. ACT. NO. 3:16cv76-WKW-TFM |
| | )              (WO) |
| SUN LIFE AND HEALTH | ) |
| INSURANCE COMPANY (U.S.), | ) |
| | ) |
| Defendant. | ) |
| | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

Plaintiff Mellissa Stevens ("Plaintiff" or "Stevens") brings this action pursuant to the Employment Retirement Income Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., against Defendant Sun Life and Health Insurance Company ("Defendant" or "Sun Life"). Specifically, Stevens asserts claims of wrongful termination of a short-term disability claim and wrongful denial of a long-term disability claim pursuant to 29 U.S.C. § 1132(a)(1)(B) and a statutory penalties claim related to the failure to provide documents required by ERISA pursuant to 29 U.S.C. § 1132(c). On March 11, 2016, Defendant filed a Motion to Dismiss invoking the affirmative defense of failure to exhaust administrative remedies and exhibits. Docs. 8 & 9. Plaintiff's Response also includes several exhibits. Docs. 13 & 14. The case was subsequently referred to the undersigned for consideration of all pretrial matters. Doc. 11.

To consider the entirety of the record, the Court converted the Motion to Dismiss into a Motion for Summary Judgment and gave the parties notice of the conversion.  Doc. 18.  On May 3, 2015, Plaintiff filed a response to the Motion for Summary Judgment. Doc. 19.  On May 16, 2016, Sun Life filed a reply, and on May 27, 2016, Plaintiff filed a sur-reply. Docs. 23, 27.   On June 20, 2016, this court held Oral Argument on the defendant's assertion that Plaintiff failed to exhaust her administrative remedies prior to filing this lawsuit.  Doc. 30.

Now pending before the court is the Motion for Summary Judgment on the basis that the Plaintiff failed to exhaust her administrative remedies.  Doc. 8. The court has carefully reviewed the Motion, the supporting and opposing briefs, and evidentiary materials and concludes that the Motion for Summary Judgment should be DENIED at this stage of the proceedings.

## II.    SUMMARY  JUDGMENT  STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation omitted); Fed.R.Civ.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for

summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine [dispute] for trial."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the defendant's properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is

merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla*., 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th

4

Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  *See also Harris v. Hartford Life & Accident Ins. Co*., 533 F. Supp. 2d 12021205 (M.D. Ala. 2008) (applying Fed.R.Civ.P. 56(c) to a motion for summary judgment on the basis of exhaustion of remedies in an ERISA case).

### III. FACTS

Viewed in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the following facts are taken as undisputed for the purpose of summary judgment.  *See Harris*, *supra*.

### A.  Exhaustion of the Claim for Short-Term Disability Benefits

Sun Life approved Plaintiff's claim for short-term disability benefits through November 3, 2014.  Doc. 9, Def's Ex. A.  Upon receiving notice that she no longer qualified for short-term benefits, Plaintiff appealed the short-term disability claim determination through Sun Life's appeal process.  On January 16, 2015, Sun Life sent a letter to Plaintiff advising that the decision to deny short-term benefits was affirmed, that she exhausted her administrative remedy, and that the claim record was closed.  *Id*. During Oral Argument, the parties agreed that Plaintiff exhausted her administrative remedies with respect to her short-term disability benefits claim.

### B.  The Long-Term Disability Benefits Claim on Administrative Appeal

On September, 2, 2015, Plaintiff's counsel received a copy of the Long-Term Disability Claim file from Sun Life.  Doc. 19, Pl's Ex. 1, Attach. D.  On November 9, 2015, Plaintiff submitted an "Appeal of Short Term and Long Term Disability Claims" and several exhibits, including a DVD of her statement (Exhibit 7).  Attach. to Doc. 14, Pl's Ex. A.  On November 11, 2015, Sun Life sent a letter to Plaintiff's counsel, acknowledging receipt of the appeal letter and indicating that a copy was provided to both the Short-Term Disability Department and Long-Term Disability Appeals Unit for review.  *Id.*

On November 16, 2015, Sun Life acknowledged receipt of the appeal of the denial of long-term benefits and indicated it was unable to access the contents of a DVD statement provided by Plaintiff.  In addition, Sun Life requested a copy of Plaintiff's Social Security file, including any award or denial notices and documents generated by the September 2015 hearing before a Social Security Administrative Law Judge.  Sun Life cautioned that the time period for review of the appeal would be tolled until submission of the Social Security file and an accessible DVD statement.  Def's Ex. A.

On December 8, 2015, Plaintiff's counsel sent a letter along with a replacement DVD and transcript to Sun Life.  Pl's Ex. A. On December 9, 2015, Sun Life sent another letter seeking the status of the requested materials and cautioning that the time period for appellate review would continue to be tolled until Plaintiff submitted the Social Security file and DVD.  Def's Ex. B.  The letters crossed in the mail.

In a letter dated December 15, 2015, Sun Life acknowledged receipt of the requested DVD and indicated that its initial review of the file and appeal was complete. Sun Life found that an independent medical examination was necessary for reconsideration of the claim on appeal and advised that an independent medical management firm, Network Medical Reviews Co. Ltd. ("NMR"), would coordinate arrangements for the evaluation with Plaintiff's counsel. Sun Life again requested the Social Security file. In addition, Sun Life cautioned that the review of the appeal would remain tolled until the completion of the independent medical examination.  Def's Ex. C.

In a letter dated December 30, 2015, NMR notified Plaintiff's counsel that an examination with Dr. Jeffrey K. Eng in Montgomery, Alabama was scheduled for January 7, 2016, and advised that Plaintiff should contact Sun Life concerning any questions or concerns about the appointment.  Def's Ex. D.

On December 31, 2015, Plaintiff's counsel sent a letter to Sun Life indicating that he did not receive the letter dated December 15, 2015, from Sun Life's counsel until December 22, 2015.  Plaintiff's counsel advised that under the terms of Sun Life's policy, the insurance company was not entitled to an independent medical examination on appeal, citing the following provision:

> While a claim is pending or after payments have commenced, we have the right to have you examined by a Physician or vocational expert of our choice as often as is reasonably necessary.  Approval of claim for benefits and the continuation of benefits are subject to your cooperation in submitting to such examination.

In addition, he argued that it is "a procedural irregularity to require an examination after the claim has already been denied." Plaintiff's counsel asserted that "Ms. Stevens will only consider an IME if it is performed by a truly 'neutral' doctor upon whom we agree and if the entire IME is videotaped by a witness accompanying Ms. Stevens." He also represented that all of the documents related to the Social Security case which were in Stevens possession were previously provided to Sun Life. Def's Ex. E.

The same day, Plaintiff's counsel also sent an additional letter via facsimile to NMR, in which he acknowledged receiving the notice of the appointment with Dr. Eng. He also stated the following:

> . . . There is some question as to whether Sun Life is entitled to an Independent Medical Examination (IME) at this point in the claims process, and we have sent a letter to Mr. Carr regarding this matter. In any event, there is a long history of a good bit of unfairness in connection with IME's, as discussed in the enclosed article from a respected news publication. I have even had a client who was harmed during an IME.

> Accordingly, we would like to try to strike a balance of fairness regarding IMEs when they are requested by insurance companies. We disagree that Sun Life is entitled to an IME but have advised them that we are willing to consent to the same with certain protections in place. My client has a right to protect herself from unfairness and physical harm. Accordingly, please verify that Dr. Eng will allow videotaping of the IME and the presence of a witness to remain in close proximity of Ms. Stevens.

Def's Ex. F.

On January 5, 2016, Sun Life's counsel sent a letter to Stevens' counsel, in which he argued that language in the policy establishes that an IME is allowed while a claim is pending and argued that such examinations are permitted on appeal. Specifically, defense counsel argued as follows:

Examination

While a claim is pending or after payments have commenced, we have the right to have you examined by a Physician or vocational expert of our choice as often as is reasonably necessary.   Approval of claim for benefits and the continuation of benefits are subject to your cooperation in submitting to such examination.

In addition, the policy includes the following language:

When Payment of the Monthly Benefit Ends

We will continue to pay you the Monthly Benefit during a Period of Disability, subject to all the terms of the policy, until the earliest of:

. . .

4.     The date you refuse to allow an examination we request or fail to cooperate fully during such examination.

Sun Life has requested the examination to address the evidence that you submitted during the appeal and your contention that Melissa Stevens remains Totally Disabled.   The request was made while the appeal and consequently the claim for benefits are pending.   Therefore, the request is a reasonable one.   I also asked our legal department to comment on your letter as it involves legal questions and they have responded with the following:

Many courts, including courts in the Eleventh Circuit, have upheld a plan's right to an IME during an administrative appeal.   They have also concluded that a claimant's failure to attend an IME means that the plan's administrative remedies have not been exhausted, requiring dismissal of the lawsuit. [Citations omitted.]

Also, we have checked with the third party vendor who scheduled the examination.   The third party vendor has advised that Dr. Eng will agree to accommodate your request to conduct the examination with a witness as long as that person agrees to simply observe without speaking to the claimant or interfering in any way with the examination.   However, Dr.

Eng will not agree to the videotaping of the examination. Therefore, we cannot consider your request to videotape the examination to be reasonable. Finally, we note that the policy does not place any of the conditions on Sun Life's right to obtain an examination and failure to attend the examination may result in denial of the appeal.

Based on the foregoing, we must insist that the examination proceed. . . .

Def's Ex. F.

On January 7, 2016, Plaintiff's counsel faxed a letter to Sun Life, acknowledging receipt of the letter advising him that Dr. Eng would not allow videotaping of the examination. Plaintiff's counsel argued that there are no policy requirements prohibiting videotaping of an examination and that the request was reasonable. In addition, Plaintiff's counsel argued that there were "numerous IME providers available to [Sun Life] who do allow videotaping" and that "Dr. Eng's refusal to do so is curious" and "raises concerns about unfairness." He also stated that his client "will cooperate [by submitting to an examination with a videographer] but we will reserve the right to respond to the IME." Plaintiff's counsel advised that "Ms. Stevens will attend the IME today, as scheduled, and will have a witness with her to videotape the examination." Pl's Ex. A. Dr. Eng, however, refused to allow videotaping in his office and the examination was cancelled.

On January 13, 2016, NMR sent a letter to Plaintiff's counsel indicating that it scheduled an appointment for her with Dr. Jack Denver in Hoover, Alabama, on February 5, 2016, and that the examiner would "allow for the exam to be videotaped, but requires a copy of the taping to be sent to him." The letter also advised that Plaintiff should contact Sun Life if there were any questions or concerns about the appointment. Def's Ex. F.

On January 14, 2016, Sun Life sent a letter to Plaintiff's counsel stating the following:

> We are in receipt of your letter dated January 7, 2016 in which you continue to argue that Sun Life is not entitled to have Ms. Stevens examined during the appeal process but that Ms. Stevens would attend the IME scheduled on January 7, 2016, with a witness to videotape the examination. Subsequently, NMR advised us that Ms. Stevens did present for the IME but declined to proceed with the IME because the physician would not allow for videotaping.
>
> Sun Life's position remains that an IME is appropriate and permissible under the policy provisions to address the evidence that you submitted on appeal and to evaluate Ms. Stevens' claimed disability. However, in good faith, Sun Life has instructed NMR to search for a physician that would agree to your conditions to allow for a witness and the videotaping of the IME. NMR has located a physician that would agree to your stipulations. However, in return for granting your request, the examining physician does request that a copy of the videotape be provided to him for his records. A copy of the appointment letter is attached.
>
> The review of the appeal remains tolled for our receipt of the IME report. We will advise you in writing if the second 45-day period is necessary to review the additional information that is provided. . . .

Def's Ex. G.

On January 19, 2016, Plaintiff's counsel sent a letter to Sun Life objecting to an appointment with Dr. Denver, arguing that "February 2, 2016 . . . is well beyond the time limit for Sunlife's decision, which was due no later than January 17, 2016" and that "tolling the time for a decision in order to obtain a third-party evaluation . . . is not permissible under the claim regulations . . . and is an improper delay of the appeal process." Def's Ex. H. In addition, Plaintiff's counsel asserted:

> It is of particular note that Sunlife has not indicated special circumstances requiring an extension of time in which to decide the appeal,

11

and no letters from Sunlife have indicated that such an extension is being claimed.

It is also noteworthy that Ms. Stevens appeared for the previously scheduled independent medical examination with Dr. Eng and was turned away by the doctor. After Dr. Eng's refusal to go forward with the IME, Sunlife then unilaterally chose a provider, despite our December 31, 2015, letter. We indicated that while we believe Sunlife is not entitled to an IME on appeal, we would agree if there were a mutually agreed upon provider who would allow videotaping of the examination. Your unilateral selection is Dr. Denver, who is well-known to be biased in favor of insurance companies. We have encountered him many times. Insurance companies' repeated use of these biased physicians is an unfairness recognized by the Department of Labor. It has been addressed in upcoming changes to the claim regulations. Since you refuse to jointly select an unbiased IME provider, we cannot agree to do this past the time permitted. The scheduling of the IME in February, due to Dr. Denver's scheduling limitations, is not adequate grounds to prejudice the delay of Ms. Stevens receiving her benefits.

Sunlife has failed to make a timely decision in this claim and the claim has been deemed exhausted. Your failure to decide the claim on a timely basis and your efforts to obtain an IME with a biased provider well after the date your decision was due are clearly adverse action. Accordingly, please provide a copy of the entire claim file to date, as well as copies of all documents listed in the attached Exhibit A, as we will be proceeding with litigation.

Def's Ex. H.

In a letter from Sun Life to Plaintiff's counsel on January 20, 2016, Sun Life disagreed with the assertion that the appeal decision was due in January 2015. Sun Life argued that the appeal review process did not begin until proper receipt of Exhibit 7 on December 14, 2015 and therefore the initial 45-day period for review had not expired and would continue to run through February 7, 2016. In addition, Sun Life invoked the additional 45-day extension period to provide time for the IME physician to prepare his

evaluation.  Sun Life insisted that Plaintiff undergo an independent medical examination,

arguing as follows:

> Sun Life maintains its position that an IME is appropriate and permissible under the terms of the policy and that the policy does not place any of the conditions or restrictions as you have argued on Sun Life's right to obtain an examination.

> As indicated in our previous letter, Sun Life requests the examination to address the evidence that you submitted during the appeal and your contention that Ms. Stevens remains Totally Disabled.  The request was made while the appeal and consequently the claim for benefits are pending.

> As the policy states:

> Examination

> While a claim is pending or after payments have commenced, we have the right to have you examined by a Physician or vocational expert of our choice as often as is reasonably necessary.  Approval of claim for benefits and the continuation of benefits are subject to your cooperation in submitting to such examination.

> When Payment of the Monthly Benefit Ends
> We will continue to pay you the Monthly Benefit during a Period of Disability, subject to all the terms of the policy, until the earliest of:

> . . .

> 4.     The date your refuse to allow an examination we request or fail to cooperate fully during such examination.

> Based on the foregoing, we must insist that the examination proceed as follows:

> The examination has been scheduled on Friday, February 5, 2016 at 12:30 p.m. with:

>> Jack Denver, M.D.

     1500 Southlake Park, Suite 150
     Hoover, AL 35244

  Lastly, you have raised concerns regarding the independent physician, Dr. Denver, chose by our independent reviewing agency. Contrary to your assertions, I have been advised that Dr. Denver has supported claimants in their claims for disability benefits in the past and in no way appears to be biased in favor of any party.

  Failure to attend the scheduled IME and cooperate fully will result in a denial of this appeal. . . .

Def's Ex. I.

  On February 4, 2016, Plaintiff's counsel sent a letter to Sun Life in which he identified three separate incidents with other clients which establish Dr. Denver "is not fair . . . and has misled claims administrators with his reports."  In addition, he argued as follows:

  Because we were agreeable to a joint IME back in early January, and because your company rejected this in favor of gaining a one-sided review from an unfair physician long after the timeframes allowed by the Claim Procedure Regulations, we have no choice but to file suit.

  Sun Life's own Appeal Procedure provided in the ERISA notice that accompanies the policy does not provide for tolling of the time. Pursuant to your own procedure, the time for a decision began to run on November 9, 2015, and if Sun Life needed additional time it was required to send a notice of extension for an additional 45 days prior to the expiration of the first 45-day period on December 24, 2015.

  You have rejected our request to send the claim file, which also is unfair.  Please understand that Ms. Stevens will not be at the IME because suit will be filed prior to the time the IME is scheduled. . . .

Pl's Ex. A.

  On February 5, 2016, Plaintiff filed the Complaint in the Middle District of Alabama, asserting that Sun Life wrongfully terminated her short-term disability benefits

claim and wrongfully denied her long-term disability benefits claim in violation of ERISA. Stevens also asserted a statutory penalties claim in which she contends that Sun Life wrongfully refused to provide documents in violation of ERISA and its regulations. Doc. 1.

One week later on February 12, 2016, Sun Life sent a letter advising that Plaintiff's administrative appeal was denied "[b]ased on Ms. Stevens continued refusal to participate in the reasonably requested and scheduled IME." Sun Life also asserted, in part, as follows:

> Your letter dated February 4, 2016 was received on February 5, 2016. Your letter continued to argue that the claim is exhausted and as such, you were filing a lawsuit. With respect to Dr. Denver, you raised several issues regarding Dr. Denver from what appeared to be personal difficulties between your office and Dr. Denver. You referenced that Dr. Denver conducted an IME on 2006 on a client named Patricia and that the IME was misleading. You also referenced a client involved with Reliance Standard Life Insurance Company that was examined by Dr. Denver and you provided your interpretation of the IME and results. Lastly, you noted a third client's claim with Liberty Life Assurance Company and reported that your office persuaded the insurer that Dr. Denver was not a qualified examiner and that the claim was reinstated.

> Sun Life's position remains that an IME is appropriate and permissible under the terms of the policy and that it has been scheduled within the ERISA review period. Furthermore, we maintain that the policy does not place any of the conditions or restrictions on Sun Life's right to obtain an examination as you have argued.

> Nonetheless, Sun Life made attempts to accommodate the conditions you placed on the IME and identified a physician that would agree to a witness videotaping the examination. However, as noted in your February 4, 2016 letter, Ms. Stevens did not attend the February 5, 2016 examination.

> Based on your client's refusal to attend the requested exam, Sun Life cannot complete its evaluation of the claim. With Ms. Stevens' appeal, you

provided additional medical records from a number of Ms. Stevens' healthcare providers. Based on the claimed disability and the additional medical data provided on appeal, an IME is appropriate to ensure a *full and fair review* of Ms. Stevens' appeal as required under ERISA.

Accordingly, the claim must be denied based on your failure to cooperate and comply with the terms of the Policy. You may appeal this decision pursuant to the instructions below by agreeing to an exam. Sun Life will also consider any other evidence in support of the claim during the appeal. Additionally, while Sun Life is not required to do so under ERISA, it will agree to provide a copy of the exam report to you prior to the final decision. I hope that you will agree to an evaluation so the evaluation of the claim can continue. Finally, I must point out that any further delay in conducting the exam may result in prejudice to Sun Life.

Pl's Ex. A. The letter also set forth the terms for the right to appeal, including the right to "submit written comments, documents, records or other information relating to [the] claim for benefits" and notice that a decision related to a request for review would be provided no later than 45 days after the request and that any extensions based on special circumstances would not exceed 45 days. *Id.* The letter also indicated that Stevens had the right to bring an ERISA action following an adverse determination on review. *Id.*

On March 2, 2016, Sun Life sent a letter to Plaintiff's counsel acknowledging receipt of the Complaint and cautioning that her refusal to submit to an independent medical examination during the pendency of the appeals process is a basis for denying long-term benefits. Sun Life requested that Stevens "immediately dismiss the complaint, without prejudice, and appear for the independent medical examination." Def's Ex. J.

## IV.    DISCUSSION

Sun Life asserts that Stevens failed to exhaust her long-term disability claim prior to filing suit in this court. Stevens, however, argues that her claims should be deemed

16

exhausted because Sun Life failed to render a final administrative decision on appeal within the applicable time period and failed to afford her a full and fair review. Sun Life argues that Stevens caused the delay by failing to provide requested evidentiary materials in a timely manner and by refusing to submit to an independent medical examination during the administrative appeal process. Sun Life specifically argues that the time period for issuing its final determination was tolled and/or extended due to Stevens' refusal to submit to an independent medical examination and her failure to produce relevant documents. Stevens contends that the terms of the policy do not require an independent medical examination during an appeal of an adverse benefit determination and that her refusal to submit to such an exam is not a sufficient reason for Sun Life to delay its final determination.

ERISA does not specifically require that a participant exhaust a plan's internal review procedures before filing a lawsuit. *See* ERISA § 503, 29 U.S.C. § 1133. The courts, however, read an exhaustion requirement into the statute in light of ERISA's provision for the administrative review of benefit claims denials. *See, e.g., Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842 (11th Cir. 1990), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001); *Springer v. Wal-Mart Assocs., Grp. Health Plan*, 908 F.2d 897 (11th Cir. 1990).

The applicability of the exhaustion doctrine is a question of law. The failure to exhaust the review procedures provided by a plan may result in summary judgment and dismissal with prejudice of any lawsuit brought to challenge a denial of benefits. *Springer, supra*; *Harrison v. UMWA 1974 Benefit Plan & Trust*, 941 F.2d 1190 (11th Cir.

1991); *Merritt v. Confederation Life Ins. Co.*, 881 F.2d 1034 (11th Cir. 1989). Alternatively, courts have remanded such actions to the plan administrator for further consideration, staying the lawsuit pending the completion of the administrative proceedings or dismissing it without prejudice.   *See, e.g., Lanfear v. Home Depot, Inc.* 536 F.3d 1217, 1225 (11th Cir. 2008) (stay); *Garland v. General Felt Indus., Inc.* 777 F. Supp. 948 (N.D. Ga. 1991) (dismissal without prejudice).

ERISA § 503(2) and its accompanying regulations require an internal process for the appeal of a benefits claim denial.  The plan must "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination."  29 C.F.R. § 2560.503-1(h)(1).   In plans offering disability benefits,[1] a reasonable opportunity for a full and fair review is fulfilled when all of the following occurs:

(1) The claimant is provided at least 180 days following receipt of an adverse benefit determination to appeal, 29 C.F.R. § 2650.503-1(h)(3)(i);

(2) The claimant is provided the opportunity to submit written comments, documents, records, and other information relating to the benefits claim, 29 C.F.R. § 2560.503-1(h)(2)(ii);

---

[1] Section 2560.503-1(h)(4) provides, "The claims procedures of a plan providing disability benefits will not, with respect to claims for such benefits, be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures comply with the requirements of paragraphs (h)(2)(ii) through (iv) and (h)(3)(i) through (v) of this section."

(3) The plan provides, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim for benefits, 29 C.F.R. § 2560.503-1(h)(2)(iii);

(4) The plan provides for an appellate review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination, 29 C.F.R. §2560.503-1(h)(2)(iv);

(5) The review does not afford deference to the initial adverse benefit determination and is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual, 29 C.F.R. § 2560.503-1(h)(3)(ii);

(6) The claims procedures provide that "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment … the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment," 29 C.F.R. § 2560.503-1(h)(3)(iii); and

(7) The claims procedures provide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with the adverse benefit determination, 29 C.F.R. § 2560.503-1(h)(3)(iv).

Stevens argues that Sun Life deliberately delayed a decision on administrative appeal of the adverse benefit determination. First, the court will discuss whether Stevens timely submitted her administrative appeal.  On May 8, 2015, Sun Life sent a letter notifying Stevens of the adverse determination of her long-term disability benefits claim. Stevens alleges that she received the notification "six or seven days after that, at least." Doc. 19-2, Pl's Affid. p. 3.  On November 9, 2015, Plaintiff submitted an appeal of the adverse decision to Sun Life.  Attach to Doc. 14, Pl's Ex. A.  Assuming Stevens received the notice six days after Sun Life sent the adverse determination letter, the appeal was timely submitted within 180 days following receipt of the adverse benefit determination as required by 29 C.F.R. § 2650.503-1(h)(3)(i).[2]

Next, the court must determine whether Sun Life was entitled to an extension and whether the time period for making the benefit determination on review should be tolled. Sun Life received the appeal of the adverse benefit determination on November 11, 2015. Thus, Sun Life had 45 days from November 11, 2016, to notify Stephens of the plan's benefit determination on review, unless special circumstances required an extension of time for processing the claim.  *See* 29 C.F.R. § 2650.503-1(i)(1)(i) & (i)(3)(i).

ERISA provides that an extension shall not exceed an additional 45 days from the end of the initial period.  *Id*.  In addition, section 2650.503-1(i)(4) requires the following:

> Calculating time periods. For purposes of paragraph (i) of this section, the period of time within which a benefit determination on review is required to

---

[2] In their Memorandum of Law in Support of the Motion to Dismiss, Sun Life alleges in its facts that "[h]er appeal was submitted on the 185th day" but that "Sun Life accepted the appeal and began to review the claim information." Doc. 9.  Sun Life, however, does not argue in its Motion that any delay in submitting an appeal is a ground for dismissing the case.  Viewing the facts in the light most favorable to the plaintiff, which the court must do on summary judgment, it is reasonable to assume that the appeal was submitted to Sun Life within the 180-day period.

be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)(2)(iii)(B), or (i)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant *responds* to the request for additional information.

The Plan also states: "In the event that a period of time is extended due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant *responds* to the request for additional information." Doc. 14-1, *Sun Life Disability Claim Procedures and Guidelines*, p. 4 (emphasis added). Thus, both the relevant regulations and the language of the Plan indicate that Sun Life is not permitted to rely on the tolling provisions once Stephens responds to Sun Life's requests for information.

In *McDowell v. Standard Insurance Company*, the court discussed the reasoning behind the tolling provisions as follows:

> This interpretation of the tolling provisions makes sense in light of the fact that tolling exists for the benefit of the claimant. [The defendant] has unilateral authority to begin tolling an extension period insofar as [it] has discretion to determine what "necessary" information is lacking. . . . However, once a claimant responds to a notification of tolling, [the defendant] must continue to process the claim and appeal in accordance with the deadlines. The court appreciates that in an ideal world, [a] disability claim reviewer would have the claimant's complete medical records before him or her when deciding a claim. However, the regulations clearly contemplate that the clock will be running in less than ideal conditions."

21

555 F. Supp. 2d 1361, 1369 (N.D. Ga. 2008) (footnotes omitted).

During Oral Argument, counsel agreed that the period is tolled between the time Sun Life requested the corrected DVD and Stevens provided the requested information. Therefore, the time period began running from November 11, 2015, the date the administrative appeal was filed, until November 16, 2015, the date Sun Life requested the additional information. The time period was tolled between November 16, 2015 and December 8, 2015, the date Stevens provided the accessible DVD.

Assuming the time period was tolled while awaiting Stevens' response concerning the Social Security file, tolling would continue through December 31, 2015, the date Stevens' counsel responded that there were no additional Social Security documents in his possession and that all the relevant materials were previously provided. *See* 2560.503-1(i)(4). There is no dispute, however, that Plaintiff's counsel did not represent Stevens in the Social Security case and that she had previously provided Sun Life with a waiver allowing it to obtain information from the Social Security Administration. Thus, her failure to provide what she previously provided is not an appropriate ground to toll the time period under these circumstances.

Sun Life argues that the initial 45-day period was also tolled between the date Sun Life sent a letter requesting an independent medical examination - December 15, 2015 - and the date Stevens refused to proceed with the medical examination. The court notes that, at this stage of the proceedings, the only issue before the court is whether Stevens exhausted her administrative remedies; the court is not at this time reviewing the administrator's final decision to deny benefits based on Steven's refusal to participate in

an independent medical examination.   For the purpose of determining whether the tolling is applicable, the court will discuss the request for an independent medical examination on administrative appeal. The problem in this case is that the plan does not specifically state that independent medical examinations may be sought after an adverse benefit determination.   "Ambiguities in ERISA plans are construed against the drafter of the document, and a claimant's reasonable interpretation is viewed as correct." *White v. Coca-Cola Co*., 542 F.3d 848, 855 (11th Cir. 2008), citing *Lee v. Blue Cross/Blue Shield of Ala.*, 10 F.3d 1547, 1551 (11th Cir. 1994).  *See also Gentle v. Kohler*, 966 F.Supp.2d 1276, 1289 (N.D. Ala. 2013).

> Although comprehensive in many respects, ERISA is silent on matters of contract interpretation. The courts have thus produced a body of federal common law providing such guidance.  *Horton v. Reliance Standard Life Ins. Co*., 141 F.3d 1038, 1041 (11th Cir. 1998) ("Courts have the authority 'to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself.'") (citation omitted).  When crafting this body of common law, "courts must examine whether the rule, if adopted, would further ERISA's scheme and goals."  *Id*.

*Dixon v. Life Ins. Co. of N. Am*., 389 F.3d 1179, 1183 (11th Cir. 2004).  "ERISA has two central goals: (1) protection of the interests of employees and their beneficiaries in employee benefit plans, *id*.; and (2) uniformity in the administration of employee benefit plans."  *Horton v. Reliance Standard Life Ins. Co*., 141 F.3d 1038, 1041 (11th Cir. 1998).

It is arguable that the language of the policy in this case is ambiguous.  Stevens contends that an independent medical examination is not appropriate during an administrative appeal and that requiring her to do so was a tactic to unreasonably delay a decision.  The court recognizes that there are circumstances where the refusal to submit

23

to an independent medical examination during the administrative appellate process is a ground to deny long-term disability benefits under the terms of an ERISA plan. In *Porter v. Provident Life and Accident Ins. Co*., No. 05-13632-AA, 2006 WL 249541, *1 (11th Cir. Feb. 2, 2006) (unpublished), the Court determined that the defendant had authority to make a final determination as to the denial of plaintiff's long term benefits due to her refusal to submit to an independent medical evaluation during the pendency of appeals process. The plan in *Porter* specifically stated, "If you do not submit to a timely independent medical examination or if you do not provide timely and satisfactory proof of continued disability, your benefits will be suspended." *Id*. The court concluded that due to the clear language requiring proof of a "continued disability," the district court did not err in holding that the request for an independent medical evaluation "was not 'wrong' under the plan and, even if 'wrong,' was reasonable given the factual circumstances, where defendant's reasons to terminate her long term benefits conflicted with her proffered evidence concerning her asserted disability." *Id*.

The plan in this case similarly provides that Sun Life has "the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits." Pl's Ex. 14-1, p. 61. The plan, however, does not specifically require proof of a "continued disability"; instead, the insurance certificate in this case states, "*While a claim is pending* or after payments have commenced, we have the right to have you examined by a physician or vocational expert of our choice as often as is reasonably necessary. *Approval of claim for benefits* and the continuation of benefits are subject to your cooperation in submitting to such

examination." Pl's Ex. 14-3, p. 29. Sun Life asserts that this language establishes that a consultative evaluation by an independent medical examiner during the pendency of the appeals process is permissible under the terms of the plan. In this case, Stevens provided additional medical evidentiary materials during the administrative appeal. The terms do not specifically state whether a claim remains pending after the claim administrator issues an initial adverse determination. Nonetheless, one may argue that a provision which requires a claimant to cooperate by submitting to an examination for the "approval of claim for benefits and the continuation of benefits" is a requirement necessary for the decision maker to make an informed decision during the claims process and, therefore, a decision maker's determination on appeal of an initial adverse claims decision should be an informed decision. A request for a healthcare provider to conduct an independent consultative evaluation to further explore whether benefits should or should not be granted prior to a final determination is one interpretation of the plan, especially where a claimant provides additional medical evidence during the administrative appeal.

There also is a strong argument that Stevens' interpretation of the terms of the plan, however, is reasonable. Stevens asserts that the terms of the policy indicate that independent medical examinations are only permitted when the claim is pending, *i.e.* until entry of an adverse determination. In other words, Stephens argues that a claim is no longer pending after the adverse denial of a claim. If this court were to find that Stevens' interpretation of the plan is reasonable, the court would be required to construe the plan against the drafter and find that Sun Life's requirement that a claimant must

submit to an independent medical examination during the administrative appeal is not found in the policy.

Even if this court were to assume *arguendo* that the terms of the plan are ambiguous and Sun Life was not entitled to request an independent medical examination on appeal of the adverse determination, the court finds that tolling between the time Sun Life requested the independent medical examination and the appointment with Dr. Eng is appropriate because Stevens consented in part to the examination. In this case, Stevens advised Sun Life that she would "consider an IME if it is performed by a truly 'neutral' doctor upon whom we agree and if the entire IME is videotaped by a witness accompanying Ms. Stevens." Def's Ex. E. She also indicated to NMR that she was "willing to consent to [an IME] with certain protections in place." Def's Ex. F. On January 5, 2016, Sun Life sent a letter to Stevens stating that Dr. Eng will allow a witness but will not allow a video camera in his office.

Despite receiving notice that Dr. Eng would not allow a video recording in his office, Stevens faxed a letter to Sun Life on January 7, 2017, the date of the scheduled examination, stating that she "will cooperate [by submitting to an examination with a videographer] but we will reserve the right to respond to the IME." Pl's Ex. A. Given Stevens' continued representations to Sun Life that she would appear at the examination, it is appropriate to toll the time between the date Stevens received the request for the independent medical examination on December 22, 2015, and the appointment date, January 7, 2016.

For the same reasons, the time period would also be tolled between the date Sun Life sent the January 14, 2016, letter to Stevens indicating that NMR found a physician who would agree to the presence of a witness and a video recording of the examination and the date Steven's counsel responded in the January 19, 2016 letter that Stevens objected to Dr. Denver and intended to proceed with litigation.

The court's calculations indicate that the 45-day period for Sun Life to enter a final decision on appeal did not expire prior to Steven's filing her case in this court. This court therefore concludes that Plaintiff did not exhaust her claim for long-term disability benefits.

This inquiry is not over, however, since the court may waive the administrative exhaustion requirement.   "[A] district court has the sound discretion 'to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate,' . . . or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Bickley v. Caremark*, 461 F.3d 1325, 1328 (11th Cir. 2006) (internal citations omitted).  While the case was pending before this court, Sun Life entered a final decision to deny benefits based on Steven's refusal to attend the scheduled independent medical examination.  Thus, any attempt by Stevens to exhaust her administrative remedies at this point is futile.  Allowing the case to go forward will not result in "premature judicial intervention in the decisionmaking process," *Mason v. Cont'l Group, Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985).   Moreover, as previously discussed, it is arguable that the terms of the policy regarding the right to an independent medical examination on administrative appeal in this case are ambiguous.  At this stage

of the proceedings, however, the court will not decide whether the decision to deny benefits on this basis is "wrong." The court finds that a waiver of the administrative exhaustion requirement in this case is appropriate. The court therefore concludes that the long-term disability claim shall proceed in this court.

### B. The Remaining Claims

In the Motion to Dismiss which the court converted to the Motion for Summary Judgment, Sun Life asserts that Stephens failed to exhaust the long-term disability benefits claim prior to filing her lawsuit in this court. Sun Life concedes that Stephens exhausted her short-term disability benefits claim. In addition, there is no argument set forth in the Motion that Stephens failed to exhaust the statutory penalty claim. The court converted the Motion to Dismiss to a Motion for Summary Judgment solely for the purpose of considering the attached evidentiary materials and responses related to the exhaustion issue. The court therefore concludes that all of the claims shall proceed at this time. At a later date, the court will issue a planning report order, which requires the parties to set forth a discovery plan and the timing of any supplemental dispositive motions.

### V.  CONCLUSION

Accordingly, it is the

RECOMMENDATION of the Magistrate Judge that the Motion for Summary Judgment be DENIED.

28

Finally, it is

ORDERED that the parties shall file any objections to the said Recommendation on or before August 10, 2016. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 26th day of July, 2016.


_____ /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE