IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:16-CV-76-WKW |
| | ) | (WO) |
| SUN LIFE AND HEALTH | ) | |
| INSURANCE COMPANY (U.S.), | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melissa Stevens brings this action pursuant to the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against Defendant Sun Life and Health Insurance Company. Defendant filed a motion to dismiss (Doc. # 8), which the Magistrate Judge converted to a summary judgment motion. (Doc. # 18.) The Magistrate Judge has filed a Report and Recommendation on the motion for summary judgment (Doc. # 31), to which Plaintiff and Defendant objected. (Doc. # 32; Doc. # 33.) After an independent and *de novo* review of those portions of the Recommendation to which objections have been made, the court agrees with the Magistrate Judge's conclusion that the motion for summary judgment should be denied, but for different reasons. *See* 28 U.S.C. § 636(b).

# I.   FACTS[1]

## A.   <u>The Disability Policies</u>

In 2014, Plaintiff worked as a mortgage loan processor at Auburn Bank. (Doc. # 1 ¶ 4.)  In connection with that employment, Plaintiff had long and short term disability employee benefit plans insured by Defendant.  Those plans are employee welfare benefit plans covered by the provisions of ERISA.

Without citing evidence, Defendant contends that, under 29 U.S.C. § 1002(16),[2] Auburn Bank is the plan administrator for the two disability policies because Auburn Bank is the employer and, therefore, the plan sponsor.  (Doc. # 32 at 19.)  However, the plan documents state that the policyholder is the "Trustee of the Financial Institutions Group Insurance Trust," a trust whose membership and function is unknown to Plaintiff and the court pending further discovery.  (Doc. #

---

[1] To the extent that a genuine dispute exists regarding any of the material facts, these facts are set forth in the light most favorable to Plaintiff.  *Arthur v. Comm'r, Alabama Dep't of Corr.*, 840 F.3d 1268, 1305 n.23 (11th Cir. 2016), cert. denied sub nom. *Arthur v. Dunn*, No. 16-602, 2017 WL 670511 (U.S. Feb. 21, 2017) (noting that, on summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party).

[2] ERISA, 29 U.S.C. § 1002(16)(A) provides that where, as here, the plan administrator is not named in the instrument under which the plan is operated, the plan administrator is the plan sponsor.  The plan sponsor is

> (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

29 U.S.C. § 1002(16)(B).

41-1 at 1.)  Plaintiff contends that, because Auburn Bank did not establish or maintain the plan, the plan sponsor – and, therefore, the plan administrator – is the Trust or some entity other than Auburn Bank.  (Doc. # 37 at 46-47.)

In pertinent part, the long term disability[3] policy at issue provides:

## Examination

While a claim is pending or after payments have commenced, we have the right to have you examined by a Physician or vocational expert of our choice as often as is reasonably necessary. Approval of [a] claim for benefits and the continuation of benefits are subject to your cooperation in submitting to such examination.

. . . .

## Your Rights Under ERISA

. . . .

**Appeal Procedure** If you are not satisfied or do not agree with the reasons for the denial of the claim, you may appeal the decision to the Claims Fiduciary named below. Should you desire a review of the claim decision, you or your designated representative must send a written request to [Defendant] within 180 days of your receipt of the benefit determination . . . .

. . . .

[Defendant] is the Claims Fiduciary for all claims and appeals. It will promptly review the claim and any appeal. You will be notified of a final decision within 45 days following the Claim Fiduciary's receipt of your written request for review. If special circumstances beyond the Claim Fiduciary's control require an extension of time for

---

[3] The facts related in this Section pertain primarily to Plaintiff's long term disability benefits claim.  Neither party objects to the Magistrate Judge's conclusion that Plaintiff exhausted her administrative remedies for her short term disability benefits claim.

processing the appeal, or obtaining more information or conducting an investigation of the facts, you will be notified in writing of this additional 45-day extension prior to the termination of the initial 45-day period. . . . Should you disagree with your benefit claims decision following the Plan's review and your appeal, you may bring a civil action under Section 502(a) of the Employee Retirement Income Security Act.

**Claims Fiduciary**

. . . .

[Defendant], as Claims Fiduciary, shall have the sole and exclusive discretion and authority to carry out all actions involving claims procedures explained in the Policy. . . .

. . . .

[Defendant's] authority is limited to such insurance policies and we are not a fiduciary of any other aspect of the Plan, insured or otherwise.  [Defendant is] not the Plan Administrator (as that term is understood under ERISA) and [Defendant is] not responsible for any asset or property which belongs to the Plan.

(Doc. # 14-3 at 29, 32-33.)

## B.   <u>Plaintiff's Disability Claims and Administrative Appeal</u>

During 2014, while employed at Auburn Bank and covered by Defendant's short and long term disability policies, Plaintiff began having back pain that interfered with her ability to work.  (Doc. # 1 at 12.)  Plaintiff filed a short term disability insurance claim, which Defendant approved upon finding that, as of September 3, 2014, Plaintiff was unable to perform her regular occupation.  (Doc. # 1 at ¶ 13.)  On November 28, 2014, Defendant terminated payment of the short

term disability benefits claim on grounds that Auburn Bank would have accommodated Plaintiff's disability. (Doc. # 1 at ¶ 16.) On April 8, 2015, Plaintiff filed a long term disability benefits claim, which Defendant denied. (Doc. # 1 at ¶¶ 18-19.)

On November 9, 2015, Plaintiff submitted a timely written appeal of the denial of her long term disability claim and the termination of her short term disability claim. In support of her appeal, she supplied several exhibits, including a DVD of a video statement regarding the effects of her disability on her ability to work. (Doc. # 14-1 at 22.) On November 11, 2015, Defendant sent a letter to Plaintiff's counsel acknowledging receipt of Plaintiff's appeal letter. (Doc. # 14-1 at 57.)

In a letter dated November 16, 2015, Defendant, acting through claims administrator Alan Carr,[4] indicated that it was unable to access the contents of the DVD. Defendant also requested a copy of Plaintiff's social security file. Defendant further stated:

> For [p]lans governed by ERISA, a 45-day period for the resolution of an appeal is allowed with one 45-day extension. Such time is, however, tolled (not counted) when the claimant or his representative have been advised of information that needs to be provided to us to proceed with review of the appeal. The time remains tolled until such information is received.

---

[4] All letters referenced in this opinion from Defendant to Plaintiff were authored by Alan Carr, a senior consultant for appeals and resolutions.

> Our review of the appeal is currently tolled for the resubmission of [the DVD] and the [s]ocial [s]ecurity documents.  Upon receipt of all the requested information, we will further review the appeal and will notify you in writing if [the] second 45-day review period is necessary to review the additional information that is provided.

(Doc. # 9-1 at 3.)

Enclosed with the November 16, 2015 letter, Defendant provided a copy of the "Sun Life and Health Insurance Company Disability Claim Procedures and Guidelines," (Doc. # 14-1 at 60-61) which provided, in pertinent part:

> [Defendant] serves as the Claims Administrator for the Plan Administrator. . . . [Defendant] possesses discretionary authority to make claim, eligibility and other administrative determinations regarding insurance policies under which you are insured, and to interpret the meaning of their terms and language.  [Defendant] shall have discretion and authority to carry out all actions involving claims procedures. [Defendant] shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any type made by [Defendant] shall not be disturbed unless [Defendant] has acted in an arbitrary and/or capricious manner. Subject to the requirements of law, [Defendant] shall be the sole judge of the standard of proof required in any claim for benefits and/or in any question of eligibility for benefits.
>
> All decisions of [Defendant] shall be final and binding on all parties. Whenever a decision on a claim is involved, [Defendant] is given broad discretionary powers, and [Defendant] shall exercise said powers in a uniform and nondiscriminatory manner in accordance with the Plan's terms. [Defendant] is not the Plan Administrator (as that term is understood under ERISA) and [Defendant] is not responsible for any asset or property that belongs to the Plan.
>
> . . . .

[Defendant] shall notify a claimant of the benefit determination on review [of an administrative appeal of a claim denial] within 45 days after receipt of the claimant's request for review unless [Defendant] determines that special circumstances require an extension of time for processing the claim.  If [Defendant] determines that an extension of time for processing is required, *written notice of the extension shall be furnished to the claimant prior to the termination of the initial 45-day period*.  In no event shall such extension exceed a period of 45 days from the end of the initial period.  *The extension notice shall indicate the special circumstances requiring an extension of time and the date by which [Defendant] expects to render the determination on review*.

The period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with these reasonable procedures, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing.  *In the event that a period of time is extended due to claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information*.

(Doc. # 14-1 at 64 (emphasis added).)

Enclosed in a letter to Defendant dated December 8, 2015, Plaintiff's counsel provided a replacement DVD and a transcript of the DVD.  (Doc. # 14-1 at 67.)

By letter dated December 9, 2015, which was apparently mailed prior to Defendant's receipt of Plaintiff's counsel's December 8 letter, Sun Life inquired as to the status of the requested materials and reiterated:

Our review of the appeal remains tolled for the resubmission of [the DVD] and the [s]ocial [s]ecurity documents.  Upon receipt of all of the requested information, we will further review the appeal and will

> notify you in writing if [the] second 45-day review period is necessary
> to review the additional information that is provided.

(Doc. # 9-2 at 2.)

In a letter dated December 15, 2015, Sun Life acknowledged receipt of the requested DVD, reiterated its request for a copy of Plaintiff's social security claim file, and stated:

> At this time, the initial review of the file and appeal has been completed.  In order to assist us in our reconsideration of the claim on appeal, we have deemed that an Independent Medical Examination ["IME"] will be required to complete our review. . . . Arrangements for the [IME] will be made through an independent medical management firm, Network Medical Reviews, Ltd. ("NMR") and will be coordinated through your office.
>
> The review of the appeal remains tolled for the scheduling and completion of the examination.  Your office will be advised in writing if the second 45-day review period is necessary to review the additional information that is provided.

(Doc. # 9-3 at 2.)

In a letter dated December 30, 2015, NMR notified Plaintiff's counsel that an examination with Dr. Jeffrey K. Eng in Montgomery, Alabama, was scheduled for January 7, 2016.   NMR advised that Plaintiff should contact Sun Life concerning any questions or concerns about the appointment.  (Doc. # 9-4 at 2.)

By letter to Defendant dated December 31, 2015, Plaintiff's counsel indicated that he did not receive Defendant's December 15, 2015 letter until December 22, 2015. (Doc. # 9-5 at 2-3.)  Plaintiff's counsel contended that, under

the terms of the policy, Defendant was not entitled to an IME on appeal.  Plaintiff's

counsel stated that, nevertheless, Plaintiff would consider an IME "if it is

performed by a truly 'neutral' doctor upon whom we agree and if the entire IME is

videotaped by a witness accompanying [Plaintiff]."  (Doc. # 9-5 at 3.)  In addition,

Plaintiff's counsel responded to the request for social security records by stating

that Plaintiff had already provided all social security documents in her possession

and that, if additional documents were needed, Defendant could obtain them from

the social security office because Plaintiff had already provided Defendant a signed

release for her social security records.  (Doc. # 9-5 at 3.)

Also on December 31, 2015, Plaintiff's counsel faxed a letter to NMR

acknowledging the notice of the appointment with Dr. Eng. He further stated the

following:

> [W]e would like to try to strike a balance of fairness regarding IMEs
> when they are requested by insurance companies. We disagree that
> [Defendant] is entitled to an IME but have advised [Defendant] that
> we are willing to consent to the same with certain protections in place.
> My client has a right to protect herself from unfairness and physical
> harm. Accordingly, please verify that Dr. Eng will allow videotaping
> of the IME and the presence of a witness to remain in close proximity
> of Ms. Stevens.

(Doc. # 9-5 at 4.)

On January 5, 2016, Defendant sent a letter to Plaintiff's counsel in which

Defendant contended that it was entitled to require Plaintiff to submit to an IME on

appeal.  Defendant insisted that the scheduled appointment proceed on January 7,

2016, under the following conditions:

> Dr. Eng will agree to accommodate your request to conduct the examination with a witness as long as that person agrees to simply observe without speaking to the claimant or interfering in any way with the examination. However, Dr. Eng will not agree to the videotaping of the examination. Therefore, we cannot consider your request to videotape the examination to be reasonable. Finally, we note that the policy does not place any of these conditions on [Defendant]'s right to obtain an examination and failure to attend the examination may result in denial of the appeal.

(Doc. # 9-6 at 3.)

On January 7, 2016, Plaintiff's counsel faxed Defendant a letter reiterating his position that, although Plaintiff was not required by the policy to submit to the IME, she would attend and would insist that the IME be videotaped. (Doc. # 14-1 at 85-86.)  When Plaintiff presented later that day for the examination, Dr. Eng refused to allow videotaping in his office, and the examination was cancelled.[5]

By letter dated January 13, 2016, NMR notified Plaintiff's counsel that it had scheduled a February 5, 2016 IME with Dr. Jack Denver, who would allow for the exam to be videotaped. (Doc. # 9-7 at 3.)  By letter dated January 14, 2016, Defendant likewise notified Plaintiff that, although it was not required to do so by the policy, it had scheduled an IME with a physician who would allow for videotaping of the exam.  Defendant further stated:

The review of the appeal remains tolled for our receipt of the IME

_____

[5] Defendant accuses Plaintiff of cancelling the examination; Plaintiff contends that Dr. Eng refused to proceed.  This particular factual dispute does not require resolution at this time.

report.  We will advise you in writing if the second 45-day review period is necessary to review the additional information that is provided.

(Doc. # 9-7 at 2.)

On January 19, 2016, Plaintiff's counsel sent a letter to Defendant objecting to the appointment with Dr. Denver.  Plaintiff contended that Dr. Denver was biased and that Plaintiff and Defendant should have chosen a mutually agreeable physician for the IME.  Plaintiff's counsel also argued that tolling pending the IME was not permitted, stating:

I am in receipt of a letter from NMR Indicating that an IME has been scheduled with Dr. Denver on February 2, 2016.  This date is well beyond the time limit allowed for [Defendant's] decision, which was due no later than January 17, 2016. Plaintiff's appeal was submitted on November 9, 2015.  On November 16, 2015, [Defendant] wrote indicating that they were not able to access the [DVD] that accompanied the appeal, and tolled the time for its decision until the requested information was received.  We responded to this request for additional information on December 9, 2015, at which time the period in which [Defendant] must make a decision on the appeal began running again.

In its letter dated December 15, 2015, [Defendant] purports to be tolling the time for a decision in order to obtain a third-party evaluation.  This is not permissible under the claim regulations.  Any delay due to a request for third party information is an insufficient basis to "toll" the time for conducting an appeal and is an improper delay of the appeal process.

The Regulations do permit an insurer to "toll" an initial claim while they request and wait for records or information.  However, once a claim has been denied and it has been appealed, an insurer may not extend the deadlines by claiming that it needs additional information from third parties. Rather, the time for deciding an appeal may not be

11

"tolled" unless the insured has failed to submit information to decide a claim. 29 C.F.R. 2560.503-h(l)(4).

It is of particular note that [Defendant] has not indicated special circumstances requiring an extension of time in which to decide the appeal, and no letters from [Defendant] have indicated that such an extension is being claimed.

. . . . Since you refuse to jointly select an unbiased IME provider, we cannot agree to do this past the time permitted.  The scheduling of the IME in February, due to Dr. Denver's scheduling limitations, is not adequate grounds to prejudice the delay of Plaintiff receiving her benefits.

[Defendant] has failed to make a timely decision in this claim and the claim has been deemed exhausted.  Your failure to decide the claim on a timely basis and your efforts to obtain an IME with a biased provider well after the date your decision was due are clearly adverse action[s].  Accordingly, please provide a true and complete copy of the claim file to-date, . . .  as we will be proceeding with litigation.

(Doc. # 9-8 at 2-3.)

By letter dated January 20, 2016, Defendant responded as follows:

This is to acknowledge that [Defendant] received your letter dated January 19, 2016 arguing that we have failed to make a timely decision on appeal and raising additional issues regarding the IME scheduled on February 5, 2016. Please be aware that based on the review of the letter as well as the timing of previous events in the claim handling process, we disagree with the arguments that you presented.

As an initial matter, regarding 45-day appeal review period, Sun Life does not agree that the appeal decision was due January 17, 2016. . . . .

[Defendant's] scheduling of an IME under the terms of the Policy is within the ERISA review period. Specifically, the appeal review period did not begin until the proper receipt of [the DVD] on

December 14, 2015. Accordingly, the 45-day period for review has not expired and will continue until February 7, 2016.

Irrespective, because the IME reviewing doctor will need time to prepare his evaluation, we are invoking the additional 45-day extension period for determination of this appeal. This will provide sufficient time for the IME report to be prepared and for Sun Life to obtain additional information, if necessary.

. . . .

Failure to attend the scheduled IME and cooperate fully will result in a denial of this appeal.

(Doc. # 9-9 at 2-3.)

By letter to Defendant dated February 4, 2016, Plaintiff's counsel notified Defendant that Plaintiff considered the appeal exhausted.   Plaintiff's counsel stated:

Because this claim has been deemed exhausted, we are filing a lawsuit.  We offered to proceed with an IME that was videotaped and with a witness present, but you insisted on proceeding with the IME provider that would not do this.  That is your fault because you knew our position prior to this IME.  You also used the slowest means of communication possible in November and December and cannot claim "tolling" due to this slowness. It also raises very serious fairness issues because [Defendant], in the past, has refused to consider additional information after making its final claim decision on appeal. We have first hand experience on this. Because of this position, claimants are placed at a disadvantage.

As you should well know, the Claim Procedure Regulation is being revised to make it explicit[l]y clear to courts that [Defendant], as well as other insurers, should not be permitted to do this – that is, develop new information in its final decision and utilize new evidence in a final decision to refuse an appeal and then quickly close a claim record, refusing the claimant the opportunity to respond.  You also did

13

not note an extension was required by December 24, 2015.  You cannot take added time or toll time for an IME either. Given the claim has been deemed exhausted, we are proceeding with litigation.

. . . .

Because we were agreeable to a joint IME back in early January, and because your company rejected this in favor of gaining a one-sided review from an unfair physician long after the timeframes allowed by the Claim Procedure Regulations, we have no choice but to file suit.

[Defendant's] own Appeal Procedure provided in the ERISA notice that accompanies the policy does not provide for tolling of the time. Pursuant to your own procedure, the time for a decision began to run on November 9, 2015, and if [Defendant] needed additional time it was required to send a notice of extension for an additional 45 days prior to the expiration of the first 45-day period on December 24, 2015.

You have rejected our request to send the claim file, which also is unfair. Please understand that [Plaintiff] will not be at the IME because suit will be filed prior to the time the IME is scheduled. Thank you very much.

(Doc. # 14-1 at 99, 101-102.)

On February 5, 2016, Plaintiff filed her complaint in this court.  (Doc. # 1.) Plaintiff seeks review of Defendant's denial of the long term disability claim and of Defendant's termination of short term disability benefits.  In addition, Plaintiff asserts a claim for statutory penalties for wrongful refusal to provide documents in violation of ERISA and its regulations.

By letter to Plaintiff dated February 12, 2016, Defendant denied the appeal, as follows:

This is to respond to your letter dated February 4, 2016 in which you maintained your client's refusal to participate in an IME that was requested by Sun Life and threatened to file litigation, which you have now done. As I was out of the office on a scheduled vacation when your letter arrived, this is my first opportunity to respond and to make a final decision on Ms. Stevens' appeal.

Based on Ms. Stevens continued refusal to participate in the reasonably requested and scheduled IME, her appeal is denied. . . .

. . . .

[Defendant's] position remains that an IME is appropriate and permissible under the terms of the policy and that it has been scheduled within the ERISA review period.  . . .

Based on your client's refusal to attend the requested exam, Sun Life cannot complete its evaluation of the claim. With [Plaintiff's] appeal, you provided additional medical records from a number of [Plaintiff's] healthcare providers. Based on the claimed disability and the additional medical data provided on appeal, an IME is appropriate to ensure a full and fair review of [Plaintiff's] appeal as required under ERISA.

Accordingly, the claim must be denied based on your failure to cooperate and comply with the terms of the Policy. You may appeal this decision pursuant to the instructions below by agreeing to an exam. [Defendant] will also consider any other evidence in support of the claim during the appeal. Additionally, while [Defendant] is not required to do so under ERISA, it will agree to provide a copy of the exam report to you prior to the final decision. I hope that you will agree to an evaluation so the evaluation of the claim can continue. Finally, I must point out that any further delay in conducting the exam may result in prejudice to [Defendant].

Right to Appeal

If you disagree with any part of our decision, you may request in writing a review within 180 days after receiving this notice.

. . . .

We will review your claim on receipt of the written request for review, and will notify you of our decision within a reasonable period of time but not later than 45 days after the request has been received. If an extension of time is required to process the claim, we will notify you in writing of the special circumstances requiring the extension and the date by which we expect to make a determination on review. The extension cannot exceed a period of 45 days from the end of the initial review period.

If a period of time is extended because we did not receive information necessary to decide your claim, the period for making the decision on review is tolled from the date we send notice of the extension to you until the date on which you respond to the request for additional information. You will have 45 days to provide the specified information.

You may have the right to bring a civil action under the Employee Retirement Income Security Act of 1974 (ERISA), §502(a) following an adverse determination on review.

(Doc. # 14-1 at 103-106.)

## II.   STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he court must view the evidence and the inferences in the light most favorable to the nonmovant." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). On the other hand, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

"A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could

reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and do not suffice to oppose a motion for summary judgment.   *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).   Hence, when a non-movant fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the non-movant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.   *Celotex Corp.*, 477 U.S. at 323.

## III.   DISCUSSION

### A.   <u>Short Term Disability Benefits</u>

Neither party objects to the Magistrate Judge's conclusion that Plaintiff exhausted her administrative remedies for her short term disability benefits claim. That portion of the Magistrate Judge's Report is without error and is due to be adopted.

### B.   <u>Long Term Disability Benefits</u>

Defendant argues that Plaintiff failed to exhaust her administrative remedies as to the long term disability benefits claim because she failed to attend the IME

and because she filed suit before Defendant issued its letter denying her appeal.

The relevant ERISA regulation provides:

(i) Timing of notification of benefit determination on review—

(1) In general.

(i) Except as provided in paragraph . . . (i)(3) of this section, the plan administrator shall notify a claimant in accordance with paragraph (j) of this section of the plan's benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60–day period. In no event shall such extension exceed a period of 60 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.

. . . .

(3) Disability claims.

(i) Except as provided in paragraph (i)(3)(ii) of this section, claims involving disability benefits (whether the plan provides for one or two appeals) shall be governed by paragraph (i)(1)(i) of this section, except that a period of 45 days shall apply instead of 60 days for purposes of that paragraph.

. . . .

(4) Calculating time periods. For purposes of paragraph (i) of this section, the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without

regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as permitted pursuant to paragraph (i)(1) . . . or (i)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. §2560.503-1(i).

As applied to this case, the plain language of the regulation[6] establishes the

---

[6]  This timetable is consistent not only with ERISA's regulations, but also with the language of the applicable plan documents. *See* Section I. of this Memorandum Opinion (setting for the applicable language from the policy and the Claim Procedures and Guidelines). Further, numerous courts have applied the plain language of the regulations in the manner described in this Memorandum Opinion, and Defendant does not offer any pertinent authority to the contrary. See, for example, *Gay v. Nat'l Rural Elec. Coop. Ass'n Grp. Benefits Program*, No. 2:14-CV-253, 2014 WL 5475284, at *4 (S.D. Ohio Oct. 29, 2014):

> [T]he initial 45–day time period began to run when Plaintiff filed his appeal (or when Defendant received notice of the same, see § 2560.503–1(i)(1)(i)), regardless of whether Plaintiff submitted all necessary information at that time. The next sentence of the regulation – "[i]n the event that a period of time is extended as permitted pursuant to paragraph (i)(1) ... of this section due to a claimant's failure to submit information necessary to decide a claim" – logically can only refer to the permissible 45–day extension discussed above. As such, the tolling provision set forth in § 2560.503–1(i)(4) is only relevant if Defendant's decision to invoke the 45–day extension was based on the special circumstance that Plaintiff failed to submit information necessary to decide his claim (and Defendant detailed that reason, along with a request for additional information, in its written notification of extension). In that case, the 45–day time period would be tolled "from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information." 29 C .F.R. § 2560.503–1(i)(4).

*See also, e.g., Heimeshoff v. Hartford Life & Acc. Ins. Co*., 134 S. Ct. 604, 613 (2013) ("The plan has 45 days to resolve that appeal, with one 45–day extension available for 'special circumstances (such as the need to hold a hearing).' §§ 2560.503–1(i)(1)(i), (i)(3)(i). The plan's time for resolving an appeal can be tolled again [that is, in addition to tolling that may have occurred during the initial claim decision] if the participant fails to submit necessary information.

20

following timetable for administrative review of an adverse benefit determination:

1.    The time for Defendant to decide the administrative appeal began to run when Plaintiff filed the appeal (or when Defendant received notice of the appeal), regardless of whether Plaintiff had submitted all information necessary to

§ 2560.503–1(i)(4).”); *Holmes v. Colorado Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1206 (10th Cir. 2014) (“[The plan administrator’s] notice to [Plaintiff] prior to the termination of the initial 45–day period, indicating that ‘special circumstances’ prevented it from rendering a decision on her first-level review and requesting a complete set of her medical records, tolled the running of the time for decision. . . . Once [Plaintiff] responded, the time limit again began to run and, in light of the extension, [the plan administrator] was required to render a decision . . . within 45 days.”); *Wiley v. The Prudential Ins. Co. of Am.*, -- F. Supp. 3d. --, 2016 WL 4468155, at * 6 (D.D.C. August 24, 2016) (“If [Defendant] had invoked the 45-day ‘special circumstances’ extension and provided as its reason that Plaintiff had not submitted the information necessary to decide her appeal, the additional 45-day review period would have been tolled from the date on which [Defendant] sent the notification of extension to Plaintiff.  And the review period would not have started to run again until ‘the date on which [Plaintiff] respond[ed] to the request for additional information.’” (citations omitted)); *McDowell v. Standard Ins. Co.*, 555 F. Supp. 2d 1361 (N.D. Ga. 2008) (detailed opinion using same calculation method and discussing the reasoning behind the tolling and extension provisions); *Tsagari v. Pitney Bowes, Inc., Long Term Disability Plan*, 473 F. Supp. 2d 334, 337-38 (D. Conn. 2007) (same calculation method); *Mindt v. Prudential Ins. Co. of Am.*, 322 F. Supp. 2d 1150, 1157 (D. Or. 2004) (applying the same calculation method and stating that the tolling applies only “‘[i]n the event that a period of time is extended as permitted pursuant to [29 CFR § 2560.503–1](i)(3),’” which in turn explicitly requires the plan administrator, “‘prior to the commencement of the extension,’” to “‘notify the claimant in writing of the extension, describing the special circumstances and the date as of which the benefit determination will be made.’”); *Lewis-Burroughs v. Prudential Ins. Co. of Am.*, No. 14-CV-1632 KM, 2015 WL 1969299, at *6 (D.N.J. Apr. 30, 2015) (“Both the Plan and the Regulation . . . impose three pre-conditions on the tolling of the deadline to decide an appeal: (1) the plan holder must have failed to provide information ‘necessary’ to the resolution of the appeal; (2) before the initial 45–day period expires, [Defendant] must send the participant written notice that it is claiming the extension; and (3) that notice must list the ‘necessary’ information that [Defendant] requires from the participant.”); *Fitzgerald v. Long-Term Disability Plan of Packard’s on the Plaza, Inc.*, No. 11-CV-956 JEC/ACT, 2013 WL 12178732, at *4–6 (D.N.M. Apr. 4, 2013) (discussing and applying the same calculation method); *Spectrum Health, Inc. v. Good Samaritan Employers Assoc., Inc. Trust Fund*, No. 1:08-CV-182, 2008 WL 5216025, at *5 (W.D. Mich. Dec. 11, 2008) (“[T]he response time is not tolled because the administrator has requested ‘necessary’ information unless it has also taken an extension because of that request.”).

make a benefit determination on review.[7]  § 2560.503-1(i)(4).

2. From the time the appeal period began running, Defendant had 45 days in which to decide the appeal. § 2560.503-1(i)(1)(i), (3)(i). Despite Defendant's representations to the contrary,[8] neither the regulations nor the plan documents provide for intermittent tolling of this initial 45-day period for every time Defendant requested necessary or other information or documents from Plaintiff (such as requests for social security records or another copy of the DVD), or for completion of the IME. Thus, the initial 45-day period expired, at the latest, by December 26, 2015, which is 45 days from the date of Defendant's November 11, 2015 letter acknowledging receipt of the appeal.

3. If Defendant determined that special circumstances necessitated an extension of time beyond the initial 45-day period, Defendant was required to provide Plaintiff with written notice of the extension prior to December 26, 2015, the date of termination of the initial 45-day period. That extension could not exceed 45 additional days to decide the appeal. In the notice of the extension,

---

[7] Thus, for example, in its letter denying the appeal, Defendant erred in representing that "[T]he appeal review period did not begin until the proper receipt of [the DVD] on December 14, 2015." (Doc. # 14-1 at 96.)

[8] In its correspondence to Plaintiff during the administrative appeal, and in its representations to the court, Defendant has been thoroughly inconsistent in its calculation methods for tolling and for the expiration dates of the first and second 45-day periods. Defendant's calculations are rife with errors that run contrary to the plain language of the regulations and relevant plan documents. Rather than attempt to address every single inconsistency and error in Defendant's various calculations, the court will simply set forth the proper method for calculation and, where particularly relevant, mention select calculation errors.

Defendant was required to "indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review."   § 2560.503-1(i)(1)(i).   Defendant did not provide Plaintiff written notice of an extension until January 20, 2016, and that notice did not include an estimate of the date by which the plan expected to render a determination on review.  (Doc. # 9-9 at 2.)

4.   If (1) Defendant provided timely notice of the 45-day extension and (2) the extension was necessitated by the special circumstance that Plaintiff failed to submit information necessary to decide the claim, then "the period for making the benefit determination on review [would] be tolled from the date on which the *notification of the extension*" – that is, the notification of the additional 45-day extension – "is sent to the claimant until the date on which the claimant responds[9] to the request for additional information."  § 2560.503-1(i)(4). Because Defendant did not timely and properly invoke an extension, Defendant also did not properly

---

[9  Contrary to Defendant's representations, tolling expires when the Plaintiff *responds* to the request for information, without regard to whether the response consists of providing or refusing to provide the information.  *See Gay v. Nat'l Rural Elec. Coop. Grp. Benefits Program*, No. 2:14-CV-253, 2014 WL 5475284, at *4 (S.D. Ohio Oct. 29, 2014) (collecting cases holding that "a claimant 'responds' to a plan administrator's request for information (so as to end the tolling period set forth in § 2560.503–1(i)(4)) at the time he or she actually responds to the request, without regard to whether he or she produces accurate (or any) information at that time"); *accord*, 65 Fed. Reg. 70246–01, 70249 n.21 (Nov. 21, 2000) (noting that a similar tolling provision in § 2560.503-1(f)(3) "ends on the date on which the plan receives the claimant's response to the notice, without regard to whether the claimant's response supplies all of the information necessary to decide the claim").]

or timely initiate tolling[10] of an extension.

Although the initial 45-day period was due to expire on December 26, 2015, the court has considered the possibility that, in the absence of timely notice of an extension, the initial 45-day period was extended beyond that date by Plaintiff's consent. *Cf.* 65 Fed. Reg. 70246–01, 70249 n. 21 (Nov. 21, 2000) (noting, with regard to a similar tolling provision in § 2560.503-1(f)(3), that "[t]he plan may only take the extensions described in the regulation . . . and may not further extend the time for making its decision unless the claimant agrees to a further extension"). Plaintiff was not required to attend the IME with Dr. Eng because it was scheduled outside the initial 45-day review period and because the second 45-day period had been neither invoked nor tolled.[11]   However, by letters to Defendant and NMR

---

[10] Defendant's notices of "tolling" prior to January 20, 2016, cannot be construed as an attempt to invoke or toll the 45-day extension because (1) those notices did not comply with the express regulation and policy requirements for providing notice of a 45-day extension and initiating the tolling period, and (2) those notices were accompanied by the statement that, "[u]pon receipt of all the requested information, we will further review the appeal and will notify you in writing if [the] second 45-day review period is necessary to review the additional information that is provided."  (Doc. # 9-1 at 3; Doc. # 9-2; Doc. # 9-3; *see also* Doc. # 9-5 (January 14, 2016 letter from Defendant stating: "The review of the appeal remains tolled for our receipt of the IME report.  We will advise you in writing if the second 45-day review period is necessary to review the additional information that is provided.").)

[11] Even if, as Defendant contends, it had the authority to require an IME while the appeal was pending, the appeal was no longer pending after the expiration of the initial 45-day period. This is true despite the fact that Defendant notified Plaintiff of the need for the IME prior to the expiration of the appeal. *Cf. Mindt v. Prudential Ins. Co. of Am.*, 322 F. Supp. 2d 1150, 1157 (D. Or. 2004) (holding that an employer, whose plan permitted it to require an IME "when the claim [was] pending" and who failed to schedule the IME sufficiently in advance of the 45-day period to render a decision within that time frame, had forfeited the right to extend the appeal beyond the initial 45-day period by failing to provide notice of the 45-day extension).

dated December 31, 2015, Plaintiff consented to the January 7, 2016 IME,[12] provided that the IME was performed by a "truly neutral doctor" agreeable to both parties, and provided she would be allowed to have a witness present to videotape the IME.  (Doc. # 9-5 at 3; Doc. # 9-5 at 4.)  By letter dated January 5, 2016, Defendant rejected Plaintiff's offer to attend a videotaped IME with Dr. Eng.  (Doc. # 9-6 at 3.)  In a letter dated January 7, 2016, Plaintiff rejected Defendant's offer that the IME be conducted with a witness present, but without video recording.  (Doc. # 14-1 at 85.)  Plaintiff attended the IME on January 7, but Dr. Eng would not proceed because Plaintiff insisted that her witness be allowed to make a video recording.

Following the aborted January 7, 2016 IME, Defendant continued to insist that Plaintiff attend an IME.  Defendant unilaterally scheduled an IME on February 2, 2016, with Dr. Denver, who would allow videotaping.  (Doc. # 9-7.)  By letter dated January 19, 2016, Plaintiff declined because Dr. Denver was not mutually acceptable and because the February 5, 2016 examination date was "well beyond the time limit allowed" for Defendant's decision.[13]  (Doc. # 9-8.)  By letter dated

---

[12]  At the time Plaintiff agreed to attend the IME with Dr. Eng, she did so despite her contention that the policy terms did not require her attendance.

[13] In the January 19, 2016 letter, Plaintiff incorrectly calculated January 17, 2016, as the deadline for Defendant's decision.  Plaintiff's error in calculation was due to the misperception that, as Defendant had earlier represented to Plaintiff, the initial 45-day period was tolled between the time Defendant requested the DVD and the time Plaintiff provided it.  (Doc. # 9-8.)

January 20, 2016, after Plaintiff had clearly indicated that she would not consent to extend the appeal time further, Defendant denied that the deadline for review had run and reiterated its insistence that Plaintiff attend the appointment with Dr. Denver.  (Doc. # 14-1 at 95-97.)

Even if Plaintiff could be considered to have consented to extend the initial 45-day period to allow for consideration of the January 6, 2016 IME with Dr. Eng (so long as a witness would be allowed to record the IME), it cannot reasonably be inferred from the facts that Plaintiff ever consented to extend the 45-day period past that date to allow for the videotaped examination by Dr. Denver on February 5, 2016.  However, Defendant waited until January 20, 2016, to attempt to invoke and toll the second 45-day period.  (Doc., # 14-1 at 96.)  It was not until February 12, 2016 – after Plaintiff again insisted that the appeal deadline had already passed (Doc. # 14-1 at 99-102)[14] and after she filed this lawsuit – that Defendant issued its letter denying the appeal while continuing to maintain that the time for the decision on review had not run.  (Doc. # 14-1 at 103.)

---

[14]  By letter dated February 4, 2016, Plaintiff argued that the time for appeal had run on December 24, 2015.  This date is 45 days from the date of Plaintiff's November 9, 2015 appeal letter, without allowance for intermittent tolling.  *See* § 2560.503-4(i)(4) (providing that "the period of time within which a benefit determination on review is required to be made shall begin at the time the appeal *is filed* in accordance with the terms of the plan" (emphasis added)).  However, § 2560.503-4(i)(1)(i) provides that "the plan administrator . . . shall notify a claimant . . . of the plan's benefit determination on review within a reasonable period of time, but not later than [45] days *after receipt of the claimant's request for review*."  (Emphasis added.)  Applying § 2560.503-4(i)(1)(i), and assuming Defendant's November 11, 2015 letter of acknowledgement was drafted on the date Defendant received the request for review, the initial 45-day period expired on December 26, 2015.

Under the circumstances, if an implied mutual agreement to extend the initial 45-day period ever existed, Defendant failed to invoke the second 45-day period or toll the running of the second 45-day prior to the expiration of that agreed extension.  Therefore, no tolling and no extension could have come into play, and Defendant failed to timely decide the appeal.

No deference is due Defendant's failure to comply with the regulation and the relevant terms of the plan documents because Defendant has no discretion to negate, ignore, or otherwise violate the plain requirements of the governing regulations.  However, even under a deferential standard of review, Defendant's interpretation[15] of the tolling provision is the very definition of "arbitrary and capricious."

Because Defendant failed to issue a decision or provide notice of an extension within the time limit for the appeal, Plaintiff is deemed to have exhausted her administrative remedies because Defendant did not render a decision within the required time limits.  29 C.F.R. § 2560.503-1(l).  Plaintiff is "entitled to pursue any available remedies" in this court "on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."  *Id*.  To the extent that the Recommendation of the Magistrate Judge is

---

[15] See, *supra*, note 8 regarding Defendant's failure to consistently, much less accurately, interpret the extension and tolling provisions of the regulation and plan documents.

inconsistent with this conclusion, the Recommendation must be overruled.

**C.**   **The Statutory Claim**

In Count III of the complaint, Plaintiff seeks to hold Defendant liable under 29 U.S.C. § 1132(c)(1)(B) for statutory penalties for failure to provide various plan documents.   Section 1132(c)(1)(B) imposes statutory penalties on "any administrator" who fails to provide certain documents to claimants in accordance with various statutory provisions.   Defendant argues that it is not a "plan administrator" for purposes of §1132(c)(1)(B) because it has not been designated as such in the plan documents, and because it is not the plan sponsor.   *See* 29 U.S.C. § 1002(16)(A) ("The term "administrator" means – (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."); 29 U.S.C. § 1002(16)(A) ("The term 'plan sponsor' means . . . (i) the employer in the case of an employee benefit plan established or maintained by a single employer, . . . or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan."); *Lee v.*

*Burkhart*, 991 F.2d 1004, 1010-1011 (2d Cir. 1993) (holding, pursuant to 29 U.S.C. § 1002(16)(A), that unless plan sponsor designates another party to provide the disclosures mandated by ERISA, the duty to make the disclosure is on the plan sponsor); *Snow v. Boston Mut. Life Ins. Co.*, 590 F. App'x 832, 835 (11th Cir. 2014) (holding that the employer, not the insurer, was the "administrator" with responsibility for providing plan documents to the claimant).

With respect to the duty to provide copies of plan documents, the plan documents do not designate Defendant as plan sponsor or plan administrator. The policy expressly states that Defendant is "not the plan administrator" for ERISA purposes and is not responsible for any aspect of the Plan other than claims administration. (Doc. # 14-3 at 33.) However, Plaintiff argues that Defendant nevertheless serves as the *de facto* plan administrator under the reasoning of *Rosen v. TRW., Inc.,* 979 F.2d 191 (11th Cir. 1992), which held that an employer was subject to suit as a *de facto* plan administrator for purposes of ERISA where the plaintiff alleged that the plan sponsor was the employer's unincorporated, unfunded, inactive alter ego, and where the employer in fact controlled the administration of the plan. *Rosen*, 979 F.2d at 193-94 ("[W]e hold that if a company is administrating the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document.").

The court agrees with the Magistrate Judge's decision to refrain from ruling

at this time on Defendant's status as *de facto* plan administrator. Any such ruling would be premature. On this record, it is not possible to determine whether the employer, the plan sponsor,[16] Defendant, or some entity other than the plan sponsor has undertaken or been delegated the duties of a claims administrator for purposes of ERISA's document dissemination provisions. Although *Rosen* may well be distinguishable, it is impossible to distinguish a case at this stage of litigation when the critical and potentially distinctive facts are unknown. Therefore, as to Count III, the Recommendation is due to be adopted, and the summary judgment motion is due to be denied.

## IV.   CONCLUSION

Accordingly, it is ORDERED:

1.   Defendant's objections (Doc. # 32) to the Recommendation of the Magistrate Judge are OVERRULED.

2.   Plaintiff's objections (Doc. # 33) to the Recommendation of the Magistrate Judge are SUSTAINED to the extent consistent with this Memorandum Opinion.

---

[16] Apparently, at the time of filing their objections to the R&R, the parties themselves were not clear on the identity of the plan administrator or plan sponsor. The plan documents do not name the plan administrator or plan sponsor. Defendant implied that Plaintiff's employer was the plan administrator pursuant to 29 U.S.C. § 1002(16)(B), which provides that the employer is the plan sponsor and administrator "of an employee benefit plan established or maintained by a single employer." (Doc. # 32 at 19.) Plaintiff, however, asserts that recent and outstanding discovery support the conclusion that her plan is maintained and established not by her employer, but by a trust of currently unknown membership and function. (Doc. # 37 at 46-47.)

3.    The Recommendation of the Magistrate Judge (Doc. # 31) is ADOPTED as to its conclusion that Defendant's motion for summary judgment should be denied, but is REJECTED as to its assessment that Plaintiff did not exhaust her administrative remedies on her long term disability claims.

4.    Defendant's motion for summary judgment (Doc. # 8) is DENIED.

5.    Defendant's motion to dismiss (Doc. # 8) is DENIED as moot.

6.    This case is REFERRED back to the Magistrate Judge for further proceedings consistent with this opinion.

DONE this 7th day of March, 2017.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE